In re HARRIS PINE MILLS, Debtor.

George MAITLAND; Neil Robblee; Cary Garman, Plaintiffs–Appellants,

v.

John MITCHELL; John Mitchell, Inc., an Oregon corporation; Rodgers Higgins, and Harris Pine Mills, Inc., an Oregon corporation, Defendants–Appellees.

In re HARRIS PINE MILLS, Debtor.

George MAITLAND; Neil Robblee; Cary Garman, Plaintiffs–Appellants–Cross–Appellees,

v.

John MITCHELL; John Mitchell, Inc., an Oregon corporation; Rodgers Higgins, and Harris Pine Mills, Inc., an Oregon corporation, Defendants–Appellees–Cross–Appellants.

Nos. 93–35358, 93–35385.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1994.

Decided Jan. 12, 1995.

Michael J. Morris, Bennett & Hartman, Portland, OR, for plaintiffs-appellants-cross-appellees.

Jacob Tanzer, Leon Simson, and James R. Herald, Ball, Janik & Novack, Portland, OR, for defendants-appellees-cross-appellants.

Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

These consolidated appeals arose out of a trustee's sale of the assets of a company in bankruptcy. When the company proved to be less profitable than the purchasers had anticipated, they sued the trustee in state court. The trustee removed the action to federal district court, which in turn referred the case to the bankruptcy court. The bankruptcy court entered summary judgment in favor of the trustee on the purchasers' claims and in favor of the purchasers on the trustee's counterclaims. The district court affirmed the bankruptcy court's rulings, and both sides have appealed. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm in part, reverse in part, and remand.

## FACTS AND PRIOR PROCEEDINGS

Harris Pine Mills ("HPM"), an Oregon corporation, was a wood products conglomerate with annual gross sales during the early 1980s in excess of $50 million. HPM consisted of four divisions: (1) Logging—HPM owned timberlands in the Pacific Northwest, conducted extensive logging operations, and owned and operated a sawmill; (2) Retail—HPM owned and operated Harris Building Supply, a hardware store; (3) Furniture—HPM owned and operated several pine furniture manufacturing plants, from which it shipped unassembled indoor furniture components to assembly plants located throughout the country; and (4) Redwood—HPM manufactured and assembled redwood patio furniture.

On December 5, 1986, HPM filed a Chapter 7 petition in bankruptcy. The bankruptcy court appointed John Mitchell ("Mitchell") to act as trustee. One of Mitchell's first actions as trustee was to ask the court to convert the case from a Chapter 7 liquidation to a Chapter 11 reorganization. After granting the motion on December 10, 1986, the bankruptcy court appointed an Oregon corporation, John Mitchell, Inc. ("JMI"), to act as HPM's Chapter 11 trustee. Mitchell, who was JMI's president and principal shareholder, and Rodgers Higgins ("Higgins"), a JMI employee, assumed HPM's chief management responsibilities; the rest of HPM's "management team" consisted of both current and retired HPM employees.

At the time JMI took over as trustee, HPM had inventory worth some $25 million, much of it consisting of unassembled furniture. JMI sought to reduce this inventory by assembling the furniture components for sale. JMI also began selling off the compa-

ny's other assets: It sold HPM's sawmill, log inventory, and related timber contracts to Louisiana Pacific Corporation for approximately $3.8 million; it auctioned off some of HPM's timberlands and additional timber contracts for another $3 million; and it sold HPM's Redwood Division to Little Lake Industries, Inc. for nearly $9.5 million. Meanwhile, JMI continued to operate HPM's Furniture Division while looking for a buyer.

In the spring of 1988, Ligna Technologies, Inc. ("Ligna") expressed an interest in acquiring the Furniture Division for $8 million. Ligna assigned a certified public accountant, George Maitland ("Maitland"), to handle the investigation of the proposed sale. When it became apparent that Ligna would not acquire the Division, Maitland decided to buy it himself after leaving Ligna's employ. Meanwhile, Kroehler Cabinet Company, Inc. ("Kroehler") offered JMI $7.5 million for the Furniture Division in August 1988. The following month JMI announced its intention to sell the Division to Kroehler.

On September 22, 1988, Maitland and Neil Robblee ("Robblee"), an attorney, submitted a $7.5 million "upset bid" on behalf of Harris of Pendleton, Inc. ("HoPI"), a company Maitland and Robblee proposed to form for the purpose of acquiring the Furniture Division by way of a leveraged buyout. Because it now had two bids, JMI agreed to hold an auction for the Division. HoPI emerged as the successful buyer at $7.85 million, and acquired the Furniture Division on December 31, 1988.[1] Congress Financial Services ("Congress") financed HoPI's down payment and provided HoPI with a working capital line of credit. After a year in business, however, HoPI filed a petition in bankruptcy.

In August 1990, Maitland, Robblee, and their partner, Cary Garman[2] ("Garman") (collectively, "Plaintiffs") filed an action in Oregon state court against JMI, Mitchell, and Higgins (collectively, "Defendants"), alleging fraud, negligence, and negligent misrepresentation surrounding HoPI's purchase

of the Furniture Division. Upon removing the case to federal district court, Defendants sought to have the action referred to the bankruptcy court. Plaintiffs objected and moved to remand the case to state court. In November 1990, the district court ruled that it had jurisdiction over the action, denied the remand motion, and referred the case to the bankruptcy court as a core proceeding under 28 U.S.C. § 157(b).

Following Plaintiffs' filing of a Second Amended Complaint, in which they added a claim under Oregon's version of the RICO statute, and the assertion of various counterclaims by Defendants, both parties moved for summary judgment. The bankruptcy court ruled in favor of Defendants on Plaintiffs' motion and dismissed Plaintiffs' Second Amended Complaint, entered summary judgment in favor of Plaintiffs on Defendants' counterclaims, and awarded costs to Defendants. Both parties appealed to the district court, which affirmed the bankruptcy court's ruling in its entirety. Plaintiffs have timely appealed, and Defendants have timely cross-appealed, to this court.

### DIRECT APPEAL (93–35358)

#### Federal Jurisdiction

■ Plaintiffs first argue that the district court erred by refusing to remand their action to state court, based on the district court's conclusion that federal jurisdiction existed over the case as a core proceeding in bankruptcy. We review de novo the court's acceptance of jurisdiction, while examining its factual determinations for clear error. See Whitcombe v. Stevedoring Servs. of Am., 2 F.3d 312, 313 (9th Cir.1993) (as amended).

■ Federal district courts have exclusive jurisdiction over all cases under Title 11 of the United States Code, and concurrent jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(a),

---

1. Although the sale was made effective on December 31, 1988, it appears that the actual transfer of assets did not take place until January 27, 1989.

2. Garman, a business broker and certified public accountant, was instrumental in helping Maitland and Robblee in their negotiations with JMI. Garman subsequently joined HoPI after agreeing to give Maitland and Robblee $50,000 in cash in exchange for 5% of HoPI's stock.

(b).[3] Those matters falling under the heading of concurrent jurisdiction (i.e., civil actions involving claims that arise under or in or are related to Title 11 proceedings) may be filed originally in state court, then subsequently removed by one of the parties to federal district court. 28 U.S.C. § 1452(a).[4] If the district court's local rules so provide, the removed action will then be referred automatically to the bankruptcy court. 28 U.S.C. § 157(a).[5] The non-removing party may in turn seek to have the case remanded to state court. 28 U.S.C. § 1452(b).[6]

Although concurrent jurisdiction claims under section 1334 are all treated the same for purposes of removal under section 1452, a distinction exists between those concurrent jurisdiction claims that "arise under" or "arise in" Title 11 on the one hand, and those that are merely "related to" Title 11 on the other hand. This distinction between "arising under," "arising in," and "related to" Title 11 has significance as a jurisdictional consideration:

> "Arising under" and "arising in" are terms of art. They are two of the three categories of cases over which district courts have jurisdiction under 28 U.S.C. § 1334(b). The third category includes cases "related to" a case under title 11. As the Fifth Circuit has explained,
>
>> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or

determined by a statutory provision of title 11.... The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*In re Wood,* 825 F.2d 90, 96–97 (5th Cir. 1987) (footnotes omitted). The court concluded: "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but ... it is an 'otherwise related' or non-core proceeding." *Id.* at 97.

*Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.),* 935 F.2d 1071, 1076–77 (9th Cir.1991) (as amended) (emphases in original; footnote omitted).

■ Put another way, claims that arise under or in Title 11 are deemed to be "core" proceedings, while claims that are related to Title 11 are "noncore" proceedings. *See e.g. Robertson v. Isomedix, Inc. (In re Int'l Nutronics),* 28 F.3d 965, 969 (9th Cir.1994) ("[c]ore proceedings are matters concerning the administration of the estate and rights created by title 11.") (internal citation and quotation omitted).

3. 28 U.S.C. § 1334(a) and (b) read, in their entirety:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

4. 28 U.S.C. § 1452(a) reads, in relevant part:

(a) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of

such claim or cause of action under section 1334 of this title.

5. 28 U.S.C. § 157(a) reads, in its entirety:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

6. 28 U.S.C. § 1452(b) reads, in relevant part:

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals ... or by the Supreme Court of the United States....

This distinction between core and noncore is important, because it determines how the claims must be treated:

> In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. In noncore matters, the bankruptcy court may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law in noncore matters are subject to de novo review by the district court.... In contrast to the bankruptcy court's authority in noncore cases, the bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court. The standard for appeal of core matters of [sic] the district court is the same as in other civil matters appealed from the district court to the circuit courts of appeal. 28 U.S.C. § 158(c).

*Taxel v. Electronic Sports Research (In re Cinematronics)*, 916 F.2d 1444, 1449 (9th Cir.1990) (quoting *Piombo Corp. v. Castlerock Properties (In re Castlerock)*, 781 F.2d 159, 161 (9th Cir.1986), in turn quoting *Production Steel, Inc. v. Bethlehem Steel Corp. (In re Production Steel)*, 48 B.R. 841, 844 (M.D.Tenn.1985)). *Accord In re Int'l Nutronics*, 28 F.3d at 969; *see also* 28 U.S.C. § 157(b), (c).[7]

While the above explains the different treatment core and noncore proceedings receive at the hands of the courts, "no exact definition of the term[s] exists in the bankruptcy code. Rather, section 157(b)(2) contains a laundry list of core proceedings along with the admonition that core proceedings include, but are not limited to, the items listed." *In re Cinematronics*, 916 F.2d at 1449–50 (citations and internal quotation

omitted). This definitional failure notwithstanding, courts are not without guidance in this area.

The leading bankruptcy treatise notes that "Section 157(b)(2) contains fifteen illustrations of core proceedings. There are four convenient categories into which these illustrations can be put. These are (a) matters of administration, (b) avoiding actions, (c) matters concerning property of the estate, and (d) others." 1 William M. Collier, *Collier on Bankruptcy* ¶ 3.01[2][b][iii] at 3–40.1 (15th ed. 1994) ("*Collier's*"). In category (a) *Collier's* lists, *inter alia*, all "matters concerning the administration of the estate". *Id.* (quoting 28 U.S.C. § 157(b)(2)(A)). Included within this category are "contract claims under state law when the contract was entered into postpetition." *Id.* at n. 67a (citing relevant case law).

■ Category (d), referred to by *Collier's* as the "omnibus category," *see id.* at 3–45, includes "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." *Id.* (quoting 28 U.S.C. § 157(b)(2)(O)). While *Collier's* criticizes much of the case law that has emerged in this category, *see id.* at 3–48 through 3–50, it quotes with approval our holding in *In re Castlerock* that "state law and contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O)."

---

7. 28 U.S.C. § 157(b) and (c) read, in relevant part:

(b)(1) Bankruptcy judges may hear and determine all ... core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate; [and]

* * * * * *

(O) other proceedings affecting the liquidation of the assets of the estate....

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceedings, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge....

*Id.* at 3–50 (citation omitted).[8]

. Relying on 28 U.S.C. § 157(b)(2)(A) and (O), which state that "[c]ore proceedings include . . . matters concerning the administration of the estate . . . [and] other proceedings affecting the liquidation of the assets of the estate," the district court in the instant case held that federal jurisdiction existed over Plaintiffs' action as a core proceeding because Plaintiffs had sued Defendants for conduct undertaken in their capacity as HPM's trustee in bankruptcy, or as agents of JMI as the bankruptcy trustee, and these actions involved the sale of assets that were the property of HPM's bankruptcy estate, all of which had been subject to the supervision and approval of the bankruptcy court.

We have not previously faced the exact question presented by this appeal. In *In re Cinematronics* we held that a state law contract claim asserted against a non-debtor in his individual capacity that did not fall squarely within one of the examples listed at 28 U.S.C. § 157(b)(2)(B)–(N) could not be a core proceeding merely by virtue of the catch-all provisions of section 157(b)(2)(A) and (O), 916 F.2d at 1450 & n. 6 (citing and discussing, inter alia, *In re Castlerock*, 781 F.2d at 162). In *In re Int'l Nutronics*, on the other hand, we held that federal antitrust claims asserted against a non-debtor that arose out of a bankruptcy proceeding could have been asserted in the bankruptcy court, even if that court later determined the claims to be noncore. 28 F.3d at 969.

Neither *In re Castlerock*, *In re Cinematronics*, nor *In re Int'l Nutronics* deal with the precise question raised in the instant appeal, and even *Collier's* offers little guidance on this point.[9] However, the clear majority of decisions from other courts that have touched on this issue hold that postpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings.[10]

For example, in *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993), the Court of Appeals for the Sixth Circuit held that

> [t]he claims against the trustee . . . would be core proceedings. While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not. All claims against [the trustee] related to his conduct during the . . . bankruptcy, and should be considered core proceedings.

973 F.2d at 483 n. 4. *Accord Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 573 (S.D.N.Y.1987) (same). *But see Thomasson v. Amsouth Bank, N.A.*, 59 B.R. 997 (N.D.Ala.1986) (trustee removed state court

---

(c)(2) [T]he district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and enter appropriate orders and judgments. . . .

**8.** Thus, even if a state law claim that is removed to federal district court does not qualify as a core proceeding under any of the fourteen categories listed in 28 U.S.C. § 157(b)(2)(A)–(N), it could still qualify as a noncore proceeding over which a district court could, in the exercise of its discretion, retain jurisdiction and refer the case to the bankruptcy court. *See* 28 U.S.C. §§ 1334(b), (c)(1); 1452(a).

**9.** *See e.g. Collier's* ¶ 3.01[1][c][vi] at 3–35 ("[W]ithout some tangible effect upon the administration of the case, or without some nexus to the bankruptcy case, a particular civil proceeding is not within the jurisdictional grant of section 1334(b).").

**10.** Most cases involving claims against bankruptcy trustees sued in state court appear to have resulted in the trustees' successful removal of the actions to federal district court. Cases finding state law claims to be noncore proceedings, however, do not involve trustees as defendants. *See e.g. Global Underwriting Mgt., Inc. v. Chatham Underwriting Mgt., Inc.*, 147 B.R. 601, 603 (Bankr.S.D.Fla.1992) (plaintiffs sued debtor-corporation's president and sole shareholder in his individual capacity; citing *Cinematronics*); *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 775–76 (Bankr. S.D.Ohio 1991) (debtor sued insurer, *inter alios*); *O'Neil v. Sherman (In re TVR of America, Inc.)*, 123 B.R. 159, 162 (Bankr.D.Conn.1991) (trustee sued former officer and shareholder of debtor corporation).

action to district court; district court re-manded to state court because, *inter alia*, state court had already dealt with the merits of the case).

In *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works)*, 815 F.2d 165 (1st Cir.1987), cited with approval in *In re Int'l Nutronics, supra*, the Court of Appeals for the First Circuit held that a postpetition state law contract claim asserted by the debt-or-in-possession and arising out of the sale of the bankruptcy estate's assets fell within the literal wording of section 157(b)(2)(A), *i.e.*, "'matters concerning the administration of the estate,' because it involve[d] a claim that arose out of the administrative activities of [the] debtor-in-possession." 815 F.2d at 168. *See also* cases cited therein.

The case of *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521 (9th Cir. BAP 1993), one of a series of actions that arose out of the DeLorean Motor Company's 1982 bankrupt-cy, is also illustrative. In 1984 the trustee in bankruptcy filed suit against John DeLorean and his attorney, Howard Weitzman, alleging a fraudulent transfer involving millions of dollars from DeLorean to Weitzman. DeLo-rean and the trustee settled their dispute and the trial court later ruled in favor of Weitz-man in the trustee's lawsuit. Weitzman then brought a malicious prosecution action in state court against the trustee and the attor-neys retained by the trustee to litigate the fraud action.

The Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit concluded that, while a case should not be deemed a core proceeding "if it is a state law claim that could exist outside of bankruptcy and is not inextricably bound to the claims allowance process or a right created by the Bankruptcy Code[,]" Weitzman's state law claims against the trustee and the trustee's agents (viz., the

lawyers retained by the trustee to sue DeLo-rean and Weitzman) constituted a core pro-ceeding subject to federal jurisdiction.[11] 155 B.R. at 525 (citations omitted).

■ Applying the above to the facts of this case, we conclude that the district court did not err by holding that Plaintiffs' postpetition state law claims asserted against the bank-ruptcy trustee and his agents for conduct inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding subject to federal jurisdiction.

### Summary Judgment

■ Plaintiffs contend that the district court erred by affirming the bankruptcy court's entry of summary judgment and dis-missal of Plaintiffs' fraud and Oregon RICO claims. We examine the evidence in the light most favorable to the nonmoving party to determine whether any genuine issues of ma-terial fact exist and whether the lower court correctly applied the relevant law. *Dowling v. Davis*, 19 F.3d 445, 447 (9th Cir.1994).

### Fraud Claims

Plaintiffs argue that substantial evidence existed from which a jury could have found that Defendants fraudulently concealed from Plaintiffs the Furniture Division's unprofita-bility, based on the following misrepresenta-tions: (1) HPM's books were prepared on an accrual basis, when their payables were actu-ally maintained on a cash basis; (2) the Furniture Division enjoyed a 20% gross mar-gin rather than the actual figure of 5%; and (3) there had been no change in 1988 in the manner in which HPM did business, and the Furniture Division's inventory had been maintained at consistent levels.

■ In order to make out a claim of fraud or deceit under Oregon law,[12] Plaintiffs had

---

**11.** More precisely, the BAP held that, because the Sixth Circuit had expressly declared in a related proceeding involving the same parties that the attorneys retained by the trustee were the trustee's agents and, therefore, entitled to the same protection afforded the trustee (who had already been dismissed from the plaintiff's ac-tion), *see Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241, 1243 (6th Cir.

1993), and Weitzman's state law claims against the attorneys fell within the scope of 28 U.S.C. § 1334(b), Weitzman's action constituted a core proceeding under 28 U.S.C. § 157(b). 155 B.R. at 525.

**12.** It is undisputed that Oregon law is control-ling.

to allege and show five things: First, that Defendants falsely represented a material fact; second, that Defendants' misrepresentation was knowingly made, or made with an insufficient basis for asserting its truth (scienter); third, that the misrepresentation was made with the intent to induce Plaintiffs to act or refrain from acting; fourth, that Plaintiffs justifiably relied on Defendants' misrepresentation; and fifth, that Plaintiffs suffered resultant damage. *See Riley Hill Gen'l Contr., Inc. v. Tandy Corp.*, 303 Or. 390, 405, 737 P.2d 595, 604 (1987); *Gregory v. Novak*, 121 Or.App. 651, 654, 855 P.2d 1142, 1143 (1993).

■ Because Defendants timely filed a motion for summary judgment that was amply supported by affidavits and similar materials, Plaintiffs were required to make a properly supported response setting forth specific facts showing the existence of a genuine issue for trial or risk having summary judgment entered against them. *See* Fed. R.Civ.P. 56(c), (e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote, internal citations and quotations omitted).

■ Plaintiffs failed to demonstrate the existence of a genuine issue of material fact with respect to any of their fraud claims. The materials before us provide ample proof that Plaintiffs, all of whom were sophisticated businessmen (two CPAs and an attorney) and experienced in operating distressed companies, understood that they could not rely on the purported accuracy of HPM's older accounting records until a new physical inventory of the Furniture Division had been taken. Moreover, the materials do not support Plaintiffs' contention that Defendants made representations upon which Plaintiffs could reasonably rely with respect to the matters covered by the disclaimer. Finally, Plaintiffs were given virtually unimpeded access to all information relating to HPM's operations and employees, and could not have failed to observe, for example, that many expenses were reported on a cash basis, not on an accrual basis. Plaintiffs' arguments concerning accumulated payables and held checks, alleged discrepancies in HPM's 2015 reports, and their purported reliance on a gross margin figure that is belied by their own sworn testimony, are simply without merit.

By their own admission, Plaintiffs were sophisticated businessmen (or "investors," to use their term of choice) who acquired "as is" a business that was in bankruptcy. Accordingly, and from the materials before us we conclude that the district court did not err by affirming the bankruptcy court's entry of summary judgment in favor of Defendants on Plaintiffs' fraud claims.

*Oregon RICO Claim*

■ Plaintiffs also contend that the district court should not have affirmed the bankruptcy court's *sua sponte* entry of summary judgment in favor of Defendants on Plaintiffs' Oregon RICO claim because, *inter alia*, Plaintiffs were not given prior notice of the court's intent to rule on that claim. An essential element of Plaintiff's Oregon RICO claim is that Defendants defrauded them. In the light of our conclusion above, it necessarily follows that Plaintiffs' Oregon RICO claim must also fail. *See California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir.1987) (plaintiffs' failure to show that genuine issue of material fact existed on their fraud claim meant that summary judgment was appropriate on their RICO claim as well), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). As for Plaintiffs' contention that the bankruptcy court should not have entered summary judgment *sua sponte*, the law is clear that, while a court may not ordinarily enter summary judgment on a claim without giving the losing party ten days' notice and an opportunity to present new evidence, "[a] district court may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion." *United States*

*v. Grayson,* 879 F.2d 620, 625 (9th Cir.1989) (citations and internal quotation omitted). Because Plaintiffs had a full and fair opportunity to ventilate the issue, the district court did not err by affirming the bankruptcy court's ruling on this issue.

### CROSS–APPEAL (93–35385)

#### *Dismissal of Counterclaims*

 Defendants contend in their cross-appeal that the district court erred by affirming the bankruptcy court's entry of summary judgment and dismissal of Defendants' counterclaims for breach of contract and conversion.[13] The gist of their breach of contract argument is that substantial evidence existed from which a jury could have found that JMI's willingness to entertain Maitland and Robblee's "upset bid" was based on a promise to capitalize HoPI with at least $600,000 in equity, a promise Plaintiffs never kept. Both the bankruptcy and district courts concluded that, because there was no formal, written capitalization obligation in the many pages of the purchase agreement between JMI and HoPI, no such contract existed. Defendants argue, however, that the purchase agreement is not the agreement to which they are referring; rather, Defendants insist that, absent an ironclad capitalization agreement between Maitland and Robblee on the one hand, and JMI on the other, JMI as trustee in bankruptcy would never have entertained the then-nonexistent HoPI as a serious contender for the Furniture Division, since JMI already had a *bona fide* offer of $7.5 million from an established firm, *viz.,* Kroehler.

With respect to the conversion argument, Defendants contend that Plaintiffs, *inter alia,* used HoPI funds to satisfy a $120,000 debt owed to American Entertainment Centers ("AEC"), Maitland's corporation, and to make payments on Robblee's note, used as collateral for a $200,000 line of credit that formed part of Robblee's capital contribution to HoPI. The district court upheld the bankruptcy court's entry of summary judgment in favor of Plaintiffs on the ground that it found no evidence "that JMI declared HOPI to be in default, and the payment to AEC (one of the assets used for plaintiffs' own benefit) was made before the disputes between HOPI and JMI arose."

In neither their original nor their second amended complaint did Plaintiffs name HoPI as a party-plaintiff, nor did they sue on behalf of HoPI. By the same token, Defendants asserted their counterclaims against Plaintiffs (specifically, Maitland and Robblee) in their individual capacities, and not against HoPI. Accordingly, we have some difficulty with the notion that Defendants' counterclaims were really asserted against the shell corporation rather than against the corporation's principals. From our review of the materials provided, we conclude that genuine issues of material fact exist on both the breach of contract and conversion counterclaims, and that summary judgment was improvidently granted on these issues. Accordingly, we must set aside the entry of summary judgment with respect to those two counterclaims and remand for further proceedings.

### CONCLUSION

We AFFIRM the district court's conclusion that it had jurisdiction over Plaintiffs' action as a core proceeding in bankruptcy, and we AFFIRM the district court's upholding of the bankruptcy court's entry of summary judgment and dismissal of all of Plaintiffs' claims against Defendants. We REVERSE the district court's upholding of the bankruptcy court's entry of summary judgment and dismissal of Defendants' breach of contract and conversion counterclaims, and REMAND for further proceedings.[14]

---

13. Defendants asserted a total of five counterclaims, alleging (1) breach of contract, (2) promissory estoppel, (3) quantum meruit, (4) withdrawal of assets, and (5) conversion. The bankruptcy court ruled on all five of these issues, and the district court discussed all five while noting that the parties had only briefed the first, fourth, and fifth of these issues. Defendants have abandoned all but the first (breach of contract) and fifth (conversion) issues on appeal to this court.

14. In the light of our ruling, we need not and do not reach the merits of Plaintiffs' argument that the district court erred by awarding costs to Defendants.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party shall bear their own costs on appeal.

