

## NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DEVORE STOP, a General Partnership,<br>　　　　　　Debtor. | BAP No. CC-21-1226-LST<br><br>Bk. No. 6:03-bk-15174-MH |
| WILLIAM MORSCHAUSER,<br>　　　　　　Appellant,<br>v.<br>CONTINENTAL CAPITAL LLC;<br>STEPHEN COLLIAS; JESSE BOJORQUEZ;<br>AMERICAN BUSINESS INVESTMENTS,<br>　　　　　　Appellees. | Adv. No. 6:12-ap-01498-MH<br><br>**MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

William Morschauser appeals the bankruptcy court's order

dismissing his claims against appellees for quiet title, declaratory relief,

and an injunction pertaining to a note and deed of trust that encumbered

---

\* This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential

two parcels of real property owned by Devore Stop ("Debtor") when it filed its chapter 11[1] petition in 2003. After the case was converted to chapter 7, the estate sold the parcels to Morschauser, one of Debtor's partners. The order approving that sale provided that the bankruptcy court retained jurisdiction to enforce the order and to determine the validity of any lien or encumbrance on the property.

Long after the case had been fully administered and closed, Morschauser filed the adversary proceeding that is the subject of this appeal. The bankruptcy court concluded that, despite the retention of jurisdiction provision in the order approving the sale to Morschauser, it lacked subject matter jurisdiction over the adversary proceeding because the litigation was commenced long after the bankruptcy case was closed, did not involve estate assets, did not require the court to interpret its prior orders, and the issues consisted entirely of state law claims between non-debtor parties. We agree. Because bankruptcy court jurisdiction is conferred by statute, retention of jurisdiction provisions in an order cannot create jurisdiction where there is none. We therefore AFFIRM.

---

value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Civil Rule" references are to the Federal Rules of Civil Procedure.

FACTS

## A.     Bankruptcy Events

Debtor was a partnership between Morschauser and Mohammed Abdizadeh. Debtor filed a chapter 11 petition in 2003, listing as assets three parcels of real property located in Devore, California ("Parcel 1," "Parcel 2," and "Parcel 3"). Appellee Continental Capital ("ConCap"), of which appellee Stephen Collias was the principal and member, held two promissory notes secured by the parcels. One of the notes ("Note 1") was in the principal amount of $850,000 and was secured by a deed of trust ("DOT 1") on Parcels 1 and 2. The other note ("Note 2") was for the principal amount of $150,000 and was secured by a deed of trust ("DOT 2") on Parcel 3.

Shortly after the petition was filed, ConCap moved for relief from stay to enforce its notes and deeds of trust. The motion was resolved by a court-approved stipulation to sell Parcel 1, with the proceeds to be applied to satisfy Note 1. At the hearing, Debtor's attorney agreed to submit an employment application for the real estate broker, Jesse Bojorquez (owner of appellee American Business Investments ("ABI")). The bankruptcy court approved the sale, conditioned upon the escrow of the broker's commission and a demand from ConCap on Note 1. ConCap submitted a demand for $1,075,000. But no application to employ Bojorquez was filed, and, in the end, the order approving the sale (the "2003 Sale Order")

provided in relevant part: "The broker Jess Bojorquez has agreed to waive his broker fees in order to consummate this sale[.]"

Unbeknownst to the court, and with Morschauser's consent, the escrow instructions were amended before closing to provide that ConCap would assign Note 2 and DOT 2 to Bojorquez in exchange for his broker services (the "2003 Assignments"). Additionally, Debtor, ConCap, Abdizadeh, and Morschauser entered into a settlement agreement for the sale that differed from the terms of the 2003 Sale Order. Although ConCap had submitted a demand for $1,075,000 as the payoff on Note 1, the settlement provided that ConCap would accept $1,175,000 "in full and complete satisfaction" of both Notes 1 and 2, rather than the $1,253,773.99 it was owed. In exchange for $1,100,000, ConCap agreed to release its claims against Parcel 1 but would retain DOT 1 as to Parcel 2 to secure the remaining $75,000. At closing, ConCap was paid $1,100,000 pursuant to the settlement. Several months later, ConCap was allegedly paid $81,464.61 in satisfaction of the outstanding $75,000 to prevent foreclosure of Parcel 2.

On April 1, 2004, the bankruptcy court granted the United States Trustee's motion to convert the case to chapter 7.

In 2005, Morschauser filed multiple actions in state court against ConCap and others for fraud, deceit, fraudulent concealment, negligence, and intentional infliction of emotional distress, challenging the notes and other obligations on the grounds that his signature on the settlement

4

agreement had been forged. Judgment was entered in favor of ConCap and affirmed on appeal.

In 2006, the chapter 7 trustee appointed in Debtor's case filed a motion to sell Parcels 2 and 3 to Morschauser subject to existing liens and encumbrances, including DOT 2, which had been assigned to Bojorquez. The sale was without prejudice to Morschauser or any party in interest bringing an action before the bankruptcy court to determine the validity of any lien. The bankruptcy court approved the sale in August 2007; the order approving the sale (the "Morschauser Sale Order") provided for the bankruptcy court to retain jurisdiction to:

> (1) enforce and implement the terms and provisions of the Sale, and this Order; (2) resolve any disputes, controversies or claims arising out of or relating to the Sale or this Order; (3) interpret, implement and enforce provisions of this Order; (4) determine in subsequent action(s) the nature, exten[t] and validity of any lien or encumbrance upon the subject Property.

The bankruptcy case was eventually fully administered, and it was closed in January 2009.

## B.    The Adversary Proceeding

In November 2012, Morschauser commenced the adversary proceeding that is the subject of this appeal. The complaint names as defendants ConCap, Collias, Bojorquez, ABI, and Abdizadeh and contains claims for: (1) quiet title; (2) declaratory relief; and (3) injunctive relief. The complaint alleges that Notes 1 and 2 have both been paid off, the deeds of

trust should not continue to encumber Parcels 2 and 3, and title should be quieted to reflect that Morschauser is the fee simple owner of both parcels.[2] ConCap filed a motion to dismiss under Civil Rule 12(b)(1) and (b)(6), pointing out that it had been paid off, and arguing that the bankruptcy court lacked jurisdiction over the adversary proceeding and that in any event the claims were time-barred. The bankruptcy court denied the motion. The bankruptcy court rejected the argument that it lacked jurisdiction, concluding that jurisdiction was proper to the extent it was being asked to determine the effect of the 2003 Sale Order and, as provided in the Morschauser Sale Order, to determine the nature, extent, and validity of any lien or encumbrance on Parcels 1-3.[3]

Bojorquez and ABI filed a cross-complaint against ConCap and Collias for: (1) conversion; (2) constructive trust; (3) unjust enrichment; (4) an accounting; (5) declaratory relief; and (6) primary and secondary indemnification and contribution. The claims were based on the allegation that ConCap had converted the funds intended to pay off Note 2, which had previously been assigned to him. The bankruptcy court granted ConCap's and Collias's joint motion to dismiss the cross-complaint's fourth

---

[2] The complaint alleged that title erroneously indicated that Abdizadeh had an interest in the parcels.

[3] The bankruptcy court's ruling was not a final order. *See Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987) ("refusal to dismiss is not a final order").

through sixth causes of action, leaving the claims for conversion, constructive trust, and unjust enrichment.

Subsequently, Bojorquez, having become aware that he could not be paid without court approval of his employment and compensation, filed an application seeking such approval nunc pro tunc, with compensation to be paid via the 2003 Assignments.[4] The bankruptcy court denied the motion.

It was not until these proceedings that the bankruptcy court learned of the 2003 Assignments. The bankruptcy court thus paused the adversary proceeding to issue an order to show cause ("OSC") why Bojorquez, ABI, Morschauser, Collias, and ConCap should not be sanctioned for facilitating or receiving payment for broker services in contravention of the 2003 Sale Order.[5]

Eventually, the bankruptcy court approved the parties' stipulation to resolve the OSC with a total payment of $6,000 to the clerk of court as a de facto sanction, $3,000 to be paid by Bojorquez and $1,500 each to be paid by Morschauser and ConCap. Although those sanctions were relatively modest, the bankruptcy court explained in its memorandum decision regarding the order on appeal that it accepted the stipulation because it lacked any effective ability to conduct discovery regarding the issues raised by the OSC, and the parties' information "was at times incorrect,

---

[4] Bojorquez erroneously filed his application in the adversary proceeding rather than the main case.

[5] Although issued in the adversary proceeding, the OSC probably should have been issued in the main case, given that it involved enforcement of the 2003 Sale Order.

inconsistent, and seemingly affected by the passage of time." The court also stated, however, that it was "emphatic . . . that all three parties acted in bad faith by their actions related to the Assignments."

In May 2019, Bojorquez filed a motion to reconsider the order denying his employment application and request for fees. The bankruptcy court eventually granted the motion, but explained that its approval of the application meant only that Bojorquez could retroactively receive the 2003 Assignments as payment, whatever their value, and subject to whatever state law rights the parties may have regarding the assignments.

At the conclusion of the OSC proceedings, all parties moved for summary judgment related to the quiet title action on Parcels 2 and 3. After reviewing the pleadings, the bankruptcy court held a hearing at which it informed the parties it did not believe it had subject matter jurisdiction over the motions because the sole issue related to the bankruptcy case, Bojorquez's employment and payment, had been resolved by final order. The bankruptcy court gave the parties an opportunity to brief subject matter jurisdiction.

After consideration of the supplemental briefing and arguments made by the parties on the record, the bankruptcy court concluded that it lacked subject matter jurisdiction and entered a memorandum and order dismissing the complaint and cross-complaint in their entirety. Morschauser timely appealed.

## JURISDICTION

As discussed below, the bankruptcy court lacked subject matter jurisdiction over the complaint under 28 U.S.C. § 1334. However, we have jurisdiction to review the court's dismissal order under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in dismissing the adversary proceeding for lack for subject matter jurisdiction?

## STANDARD OF REVIEW

We review de novo questions of subject matter jurisdiction. *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 910 (9th Cir. BAP 1995). De novo review means that we review the matter anew, as if the bankruptcy court had not previously decided it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Bankruptcy court jurisdiction is governed by 28 U.S.C. §§ 1334 and 157. Bankruptcy courts, via referral from the district courts, have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). And 28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" that are referred to it by the district court. Subsection (b)(2) of § 157 provides a non-exhaustive list of "core"

proceedings. A matter may be a core proceeding even if state law may affect its outcome. 28 U.S.C. § 157(b)(3).

A bankruptcy court may also exercise ancillary jurisdiction to interpret and effectuate its orders entered in a dismissed or closed bankruptcy case. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (bankruptcy court had jurisdiction to interpret and enforce confirmation and settlement orders entered in a long-closed chapter 11 case); *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989); *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 240 (9th Cir. BAP 2002). *See also Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n)*, 439 F.3d 545, 549 (9th Cir. 2006) (ancillary jurisdiction may be exercised to enable a court to vindicate its authority and effectuate its decrees). When a case has been fully administered and closed, the bankruptcy court's ancillary jurisdiction is extremely limited. *See Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1136 (9th Cir. 2010) (holding that bankruptcy court lacked ancillary jurisdiction over state law breach of contract claim arising out of sale order entered postconfirmation in chapter 11 case where plan had been substantially consummated and case closed).

"The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction." *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1284 (9th Cir. 2013) (citing *McNutt v. GM Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)).

The bankruptcy court concluded that the adversary proceeding was not a core proceeding "arising under" or "arising in" the bankruptcy, nor was it "related to" the bankruptcy. The court also concluded that the adversary proceeding did not meet the criteria for retaining ancillary jurisdiction.

Morschauser's arguments on appeal are difficult to discern. Most of the argument section of his opening brief is devoted to citing statutes and case law pertaining to bankruptcy court jurisdiction, but he presents little to no analysis explaining how the bankruptcy court erred in its interpretation of the applicable law. Instead, Morschauser's entire jurisdictional argument seems to be premised upon the retention of jurisdiction provision in the Morschauser Sale Order. But because bankruptcy court jurisdiction is conferred by statute, retention of jurisdiction provisions in an order cannot create jurisdiction where there is none. *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663-64 (1st Cir. 2017); *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004). *See also In re Ray*, 624 F.3d at 1136 n.8 ("Nor does the bankruptcy court's express retention of jurisdiction, alone, bring this case within its ancillary jurisdiction.").

**A.** **The bankruptcy court did not err in concluding that the claims asserted in the adversary proceeding were not core matters arising under the Bankruptcy Code or in a case under title 11.**

For a claim to "arise under" title 11, it must involve a cause of action created or determined by a statutory provision of title 11. *In re Ray*, 624 F.3d at 1131. Morschauser does not argue that the claims "arise under" the Bankruptcy Code, nor could there be any plausible argument to that effect. They are all state law claims.

Nor do the claims "arise in" a case under the Code. A proceeding "arises in" a case under the Bankruptcy Code "if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.* (citation omitted).

The bankruptcy court found that the claims in the adversary proceeding did not arise in the bankruptcy case. It found that the central question was whether Bojorquez held any interest in Note 2 and DOT 2, whether those instruments were valid and enforceable, and whether and to what extent Note 2 had been satisfied. To the extent the claims were against ConCap, the court found that the question of ConCap's interest in the parcels was "ensnared with the main issue." As a result, the bankruptcy court concluded that all the claims and crossclaims asserted in the adversary proceeding were governed solely by state law. It rejected Morschauser's argument that the claims were "inextricably intertwined" with the administration of the estate, noting that the 2003 Assignments to

12

Bojorquez were done outside of the bankruptcy proceedings without court knowledge or authorization.

On appeal, Morschauser does not refute the bankruptcy court's interpretation of the claims asserted in the adversary proceeding. He cites two Ninth Circuit cases where "arising in" jurisdiction was held to exist, *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431 (9th Cir. 1995), and *Harris v. Wittman (In re Harris)*, 590 F.3d 730 (9th Cir. 2009). Although he does not explicitly analyze how those cases apply, we assume he believes they support the conclusion that the claims at issue here arose in the bankruptcy case. But both cases are distinguishable.

In *Harris Pine Mills*, the chapter 11 trustee sold certain estate assets. 44 F.3d at 1433-34. After the sale closed, and while the case was still pending, the purchasers sued the trustee and others in state court for fraud, negligence, and negligent misrepresentation surrounding the asset sale. *Id.* at 1434. The defendants removed the case to district court, which granted their motion to refer it to the bankruptcy court over the purchasers' objection. *Id.* After the bankruptcy court ruled on the parties' cross-motions for summary judgment, they appealed and cross-appealed directly to the Ninth Circuit. *Id.* Among other things, the purchasers assigned error to the district court's refusal to remand their action to state court, arguing that there was no federal jurisdiction. *Id.* The Ninth Circuit rejected this argument, relying on authority from other circuits holding that postpetition state law claims asserted by or against a bankruptcy trustee or

13

its agents for conduct arising out of the sale of property of the bankruptcy estate qualified as core proceedings. *Id.* at 1437-38. It thus concluded that the district court did not err by holding that the state law claims against the trustee and its agents "for conduct inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding subject to federal jurisdiction." *Id.* at 1438.

In *Harris*, a chapter 7 debtor sued the chapter 7 trustee in state court for breach of a bankruptcy court-approved settlement agreement, breach of fiduciary duty, fraud, negligent misrepresentation, and constructive fraud. 590 F.3d at 736. The trustee removed the case to the bankruptcy court, which denied the debtor's motion for remand. *Id.* The bankruptcy court thereafter granted the trustee's motion to dismiss the complaint under Civil Rule 12(b)(6); debtor appealed to the district court, which affirmed. *Id.* The Ninth Circuit Court of Appeals also affirmed. Relying on *Harris Pine Mills*, the Circuit held that the bankruptcy court had core, "arising in" jurisdiction over the claims because they could not exist independently outside the bankruptcy case. *Id.* at 738. The court of appeals reasoned that the adversary proceeding was based on debtor's allegation that the trustee breached the settlement agreement by selling estate assets debtor had not agreed to sell in exchange for a creditor's release of claims against the estate and assumption of estate liabilities that were allegedly released by the settlement agreement; accordingly, the contract claim arose in the bankruptcy case. *Id.*

Neither *Harris Pine Mills* nor *Harris* supports a finding that the claims at issue here are core claims arising in the bankruptcy case. The claims here were not brought by or against a debtor or trustee, and there are no allegations of wrongdoing in the bankruptcy case. And, importantly, Morschauser fails to identify any bankruptcy questions underlying his claims or any provision of the bankruptcy court's orders that require interpretation. Instead, he makes the bare assertion that the claims were a "direct result" of the 2003 Sale Order and the Morschauser Sale Order. But even though the sales took place during the bankruptcy case, this does not mean that the claims **arose in** the bankruptcy case within the meaning of 28 U.S.C. § 1334(b).

> [T]he fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding. Instead, the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise <u>only</u> in the context of a bankruptcy case.

*Gupta*, 858 F.3d at 664-65 (emphasis in original) (citations omitted). *See also Schultze v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014) ("Core proceedings arising in title 11 are matters that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." (cleaned up)).

The bankruptcy court did not err in concluding that the claims were not core claims arising in the bankruptcy case.

**B.** **The bankruptcy court did not err in concluding that the adversary proceeding was not "related to" the underlying bankruptcy case.**

Proceedings that are "related to" the bankruptcy include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995) (citation omitted). The Ninth Circuit has adopted the Third Circuit's test for determining whether a civil proceeding is related to bankruptcy:

> "whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*Feitz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). More recently, the Ninth Circuit held that this test is overbroad in the postconfirmation context and adopted the "close nexus" test for postconfirmation jurisdiction articulated by the Third Circuit in *In re Resorts Int'l, Inc.*, 372 F.3d at 166-67. *In re Pegasus Gold Corp.*, 394 F.3d at 1194.[6] But the close nexus test has no application here, where there is no confirmed plan. *See In re Valdez Fisheries*, 439 F.3d at 548 (holding that the

---

[6] The Third Circuit concluded that matters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan"

16

close nexus test did not apply to adversary proceeding between two creditors brought after closing and dismissal of the underlying chapter 11 bankruptcy case because there was no confirmed plan and the litigants did not claim that the dispute would have any effect on the closed bankruptcy case).

The claims at issue here do not meet the criteria for "related to" jurisdiction. As the bankruptcy court found, the resolution of enforceability and ownership of Note 2 and DOT 2 will have no effect whatsoever on the Debtor, which sold its interests in Parcels 1-3 during the bankruptcy case, or the bankruptcy estate, which had been fully administered and closed when the adversary proceeding was filed. On appeal, Morschauser has not presented any argument to the contrary. The bankruptcy court did not err in concluding that it lacked "related to" jurisdiction over the adversary proceeding.[7]

## C.     The bankruptcy court did not err in concluding that it lacked ancillary jurisdiction.

---

would typically have the requisite close nexus. *In re Resorts Int'l*, 372 F.3d at 167.

[7] Apparently out of an abundance of caution, the bankruptcy court also analyzed the factors to be applied in the Ninth Circuit in determining whether to retain jurisdiction over an adversary proceeding when the underlying case has been dismissed, i.e., economy, convenience, fairness, and comity. *See Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir. 1992). The bankruptcy court correctly concluded that the factors did not support "retaining" jurisdiction. Morschauser does not argue otherwise. The adversary proceeding was filed long after the case was closed; therefore, the bankruptcy court could not "retain" jurisdiction over it, so the *Carraher* analysis is inapplicable.

As noted, a bankruptcy court may retain ancillary jurisdiction to vindicate its authority and effectuate its decrees. *In re Ray*, 624 F.3d at 1130-31. But, as explained above, Morschauser presents no basis for the argument that the adversary proceeding requires interpretation or enforcement of the bankruptcy court's prior orders.[8] He relies entirely upon the retention of jurisdiction provision of the Morschauser Sale Order. For all the reasons set forth above, the bankruptcy court lacked jurisdiction over the adversary proceeding. Therefore, the retention of jurisdiction provision is "fundamentally irrelevant." *In re Resorts Int'l*, 372 F.3d at 161.

The label "retention of jurisdiction" is, to some extent, a misnomer, and arguably unnecessary. With or without such a provision, the bankruptcy court retains ancillary jurisdiction to interpret and enforce its orders; a retention of jurisdiction provision is simply an acknowledgement of the court's ancillary jurisdiction and an indicator of the court's willingness to exercise it, if appropriate. And underlying such a provision is the assumption that, if the parties later come before the court to litigate a matter involving the prior order, the bankruptcy court will still have subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157. In other words,

---

[8] In Morschauser's reply brief, he contends that *Doolittle v. County of Santa Cruz (In re Metzger)*, 346 B.R. 806 (Bankr. N.D. Cal. 2006), is "most directly on point to this appeal." There, the Bankruptcy Court for the Northern District of California (not the BAP, as Morschauser asserts) exercised "related to" jurisdiction to interpret and enforce an order approving a sale of property that was entered in a different bankruptcy case. But that case is distinguishable—in *Metzger*, while jurisdiction may have been proper, it was neither contested nor fully analyzed, and here, the claims asserted in the adversary

such provisions assume that nothing will have happened to affect the bankruptcy court's jurisdiction. As illustrated by this case, and analyzed in many published decisions, particularly those dealing with postconfirmation jurisdiction, this is not always true.

Here, the bankruptcy court initially concluded that it had jurisdiction over the adversary proceeding to the extent it required interpretation or enforcement of its prior orders. But once the court learned of the parties' misconduct in changing the terms of the 2003 Sale Order without court approval, it correctly concluded that it lacked jurisdiction over the claims in the adversary proceeding. Where, as here, the parties themselves changed the terms of a sale order without bankruptcy court knowledge or approval, it is disingenuous to argue that the court "retained" jurisdiction to resolve issues and disputes that originated from that change in terms.

A final note: in the course of analyzing the issues in the adversary proceeding, the bankruptcy court discovered misconduct that occurred in the main case. In addressing that misconduct, the court took actions in the adversary proceeding that should have occurred in the main case, specifically, the approval of Bojorquez's employment and fee application, and the issuance of the order to show cause for violation of the 2003 Sale Order. But those actions did not impact the bankruptcy court's lack of jurisdiction over the adversary proceeding. The claims and cross-claims asserted in the adversary proceeding were purely state law claims between

proceeding do not require the bankruptcy court to interpret or enforce its prior orders.

non-debtor parties that did not require the bankruptcy court to interpret or enforce its prior orders.

## CONCLUSION

For these reasons, the bankruptcy court did not err in dismissing the adversary proceeding for lack of jurisdiction. We therefore AFFIRM.