**In re BALBOA IMPROVEMENTS, LTD., Debtor.**

**John Glenn MANGUN, d/b/a Merlin Management Ltd., Appellant,**

**v.**

**Michael J. BARTLETT, Michael J. Bartlett Professional Corporation, Appellees.**

BAP Nos. CC–87–2030–JMeMo, CC–87–1998–JMeMo.
Bankruptcy No. SA86–05875 PE.
Adv. No. SA87–0334.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 16, 1988.

Decided May 30, 1989.

Barry A. Bisson, Huntington Beach, Cal., for appellant.

Michael J. Bartlett, Mission Viejo, Cal., for appellee.

## OPINION

Before JONES, MEYERS and MOOREMAN, Bankruptcy Judges.

JONES, Bankruptcy Judge:

The Appellant appeals a bankruptcy court order dismissing his complaint for lack of subject matter jurisdiction. The Appellee cross-appeals the denial of his request for sanctions. We REVERSE and REMAND.

## FACTS

In August, 1986, the Debtor, Balboa Improvements, Ltd. (Balboa), filed a petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy petition and schedules were allegedly prepared by Appellant, John Glenn Mangun (Mangun) for a $3,000.00 fee. Mangun is not an attorney. Mangun contends that the original filing was done in *pro per* and does not acknowledge that he prepared the petition or schedules. Balboa is a limited partnership, consisting of one general partner, Griswold's Development Corporation (Griswold's), and eleven limited partners. Balboa's primary asset was the Balboa Inn, a 44–room hotel in Newport Beach, California.

At the time the petition was filed, Balboa was approximately $154,000.00 behind in its payments to the first deed of trust holder, Lloyds Bank, and $264,000.00 behind in its payments to the second deed of trust holders, Mr. and Mrs. Wang (Wangs). The principal amounts owed to the first and second deed of trust holders totalled more than $5 million. In addition, Balboa owed approximately $75,000.00 in unpaid property taxes and approximately $600,000.00 in unsecured debts.

According to Appellant Mangun, on October 20, 1986, Merlin Management Ltd., a sole proprietorship owned by Mangun, entered into a contract with Griswold's. The contract provided that Merlin would be entitled to a fee of one-half of one percent if Merlin procured a refinancing package or buyer for any real property sold by Griswold's in its capacity as general partner. Mangun contends that Griswold's was acting as general partner for Balboa, and that a sale or the refinancing of the Balboa Inn was covered by the agreement. However, the agreement does not make specific reference to either Balboa or the Balboa Inn. The agreement was not disclosed to nor approved by the bankruptcy court.

Mangun contends that on November 18, 1986, he introduced First Wellington Group (FWG), a willing and able buyer of the Balboa Inn, to Griswold's and that on the same date, FWG and Griswold's entered into a sales agreement to purchase the Balboa Inn. A real estate broker, Tom Sinay, apparently was also involved in the transaction.

At a hearing on the Wangs' motion for relief from stay, Appellee Michael J. Bartlett Esq., appearing for Balboa, informed Bankruptcy Judge Peter Elliott that a sale to FWG was pending and that escrow should close by February 15, 1987.[1] Premised on the pending sale, Judge Elliott ordered Balboa to make two $26,000.00 adequate protection payments to the Wangs. He further ordered a foreclosure sale to be held on March 3, 1987 if escrow did not close by February 28, 1987.

On January 5, 1987, George Auger of Griswold's, the general partner of Balboa, informed Mangun that 53% of the limited partners had voted against the sale because of potential adverse tax consequences. However, after continued discussions, Auger and Mangun reached an

---

1. Approximately one month after Balboa filed bankruptcy, it retained Michael J. Bartlett Esq. (Bartlett) to represent it in the bankruptcy case.

Bartlett claims he was unaware of Mangun's relationship with Balboa during his representation of Balboa.

agreement that they believed would obtain the sought after tax results. FWG and Auger agreed that in order to spare expense to the estate, FWG's attorney would draft the agreement. If the agreement was approved by the limited partners, Bartlett was to present it to the bankruptcy court as a plan of reorganization.

According to Bartlett, FWG sent a copy of the proposed agreement to Auger. On the day Auger received the proposal, he was served in a lawsuit by one of the limited partners. On that day, Auger forwarded both the proposal and a notice of resignation as the general partner to the limited partners. Bartlett contends that the limited partners never formally responded to the proposal. Bartlett also contends that he did not participate in the negotiations of the proposal, that he never received a copy of it and that he never knew of its existence.

Bartlett contends that he learned of Auger's resignation on about February 13, 1987. Shortly thereafter, Bartlett made an inquiry at the Balboa Inn where he discovered that only three employees remained and that operations of the hotel had virtually ceased. The employees refused to disclose the whereabouts of Balboa's books and records. About the same time, the Wangs and their attorney informed Bartlett that they believed the hotel's good will would be destroyed if the hotel was closed for any period of time. The Wangs offered to operate the hotel at their expense until the foreclosure sale took place on March 3, 1987. The Wangs also offered to turn over all the proceeds received from the hotel operations to the estate.[2] Pursuant to the aforementioned facts and Bartlett's belief that there was no likelihood of reorganization he made an ex-parte application to the bankruptcy court seeking conversion of the case to a Chapter 7. Bartlett's application was granted by Judge Ryan on February 18th.

However, Mangun contends that the conversion was not necessary since the limited partners approved the proposal on February 19, 1987. Mangun also contends that on February 20, 1987, FWG threatened to withdraw their offer if the case was not converted back to a Chapter 11. On March 2, 1987, Mangun in *pro per*, appeared before the bankruptcy court requesting that the case be reconverted to a Chapter 11. Mangun also sought additional time in which to present the FWG plan to the court. These requests were denied by the bankruptcy judge and on March 3, 1987 the Balboa Inn was sold to the Wangs at foreclosure for approximately $2.7 million.

On May 19, 1987, Mangun filed an adversary proceeding against Bartlett. In essence, the complaint alleged that Bartlett had conspired with the Wangs and their attorney to sabotage the sale to FWG, thereby depriving Mangun of his fee and causing damage to the estate. Bartlett answered the complaint, alleging, *inter alia*, that the court lacked subject matter jurisdiction over the proceeding and made a request for sanctions. Soon thereafter, Bartlett filed a motion for summary judgment. On September 10, 1987, at the hearing on Bartlett's motion, Judge Ryan dismissed the adversary proceeding for lack of subject matter jurisdiction. Judge Ryan further noted that he believed the complaint was frivolous from both a factual and legal standpoint, but because he lacked subject matter jurisdiction, he was compelled to deny Bartlett's request for sanctions. Mangun appealed the court's dismissal of his complaint and Bartlett filed a cross-appeal of the denial of his request for sanctions.

### ISSUES PRESENTED

A. Whether Mangun's claim against Bartlett is a related proceeding over which the bankruptcy court has jurisdiction.

B. Whether a bankruptcy court may sanction a party after a case has been dismissed for lack of subject matter jurisdiction.

---

2. The Wangs earned approximately $10,000.00 for the estate between February 15th and March 3rd.

## STANDARD OF REVIEW

The existence of subject matter jurisdiction presents a question of law and is subject to *de novo* review. *Peter Starr Production Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

## DISCUSSION

### A. *Subject matter jurisdiction.*

■ As noted, Judge Ryan stated that he found Mangun's complaint frivolous from both a legal and factual standpoint. In addition, Judge Ryan opined that if he had subject matter jurisdiction over the action he would have granted Bartlett's motion for summary judgment. We support Judge Ryan's opinion that Mangun's lawsuit is frivolous but not Judge Ryan's opinion regarding subject matter jurisdiction.

Pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), the federal district court has original and exclusive jurisdiction of all cases under title 11. 28 U.S.C. § 1334(a). The district court has original jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). Furthermore, a bankruptcy judge may hear and determine all cases arising under the Bankruptcy Code and all core proceedings arising in a bankruptcy case. 28 U.S.C. § 157(b)(1). Accordingly, for subject matter jurisdiction to exist there must be at least some relationship between the proceeding and the title 11 case. We find that relationship to be present here.

In the instant case, Mangun sued Bartlett, the debtor's attorney, for damages arising out of Bartlett's alleged interference with prospective economic advantage, fraud, interference with contract, negligence, malpractice and detriment to the estate. Since the debtor, Balboa, is not a defendant in the suit, we must determine whether the action between Mangun and Bartlett is sufficiently connected with the Balboa bankruptcy estate.

Although a related proceeding need not necessarily be against a debtor, it is clear that the proceeding must somehow affect the property or the administration of the estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). In *Pacor, Inc.*, the Third Circuit held that an action is related to bankruptcy "if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) or which in any way impacts upon the handling and administration of the bankruptcy estate". *Pacor, Inc.*, 743 F.2d at 994. Recently, the Ninth Circuit decided *In re Fietz*, 852 F.2d 455 (9th Cir.1988) and *In re Kaonohi Ohana, Ltd.*, 873 F.2d 1302, 1306 (9th Cir.1989) which adopted the rationale of the court in *Pacor, Inc.* In *In re Fietz*, the Ninth Circuit concluded that:

> ... [T]he *Pacor* definition best represents Congress's intent to reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding.... The *Pacor* definition promotes another congressionally-endorsed objective: the efficient and expeditious resolution of all matters connected to the bankruptcy estate.

852 F.2d at 457.

Since the proceeding between Mangun and Bartlett pertains to the administration of the estate by debtor's counsel and with respect to an asset of the estate, i.e., the Balboa Inn, we believe the outcome of the action directly affects the administration of the bankruptcy estate. The action is core to the extent any judgment would determine the proper administration of the estate by debtor's counsel or the right to professional fees or commissions by an unapproved professional, by virtue of either 28 U.S.C. § 157(b)(2)(A), "matters concerning the administration of the estate" or 28 U.S.C. § 157(b)(2)(*O*), "other proceedings affecting the liquidation of the assets of the estate." The action may only be a related proceeding to the extent it seeks determination of damages between Mangun and Bartlett. This action is related since the claim for damages is based upon alleged misconduct in the very administration of the estate. In addition, the court may entertain the action for damages un-

der. the doctrine of pendent jurisdiction since the damages are claimed to arise from misconduct in the administration of the estate. *See Melamed v. Lake County National Bank,* 727 F.2d 1399 (6th Cir. 1984).

Jurisdiction over a claim of misconduct by the debtor's attorney in the administration of an estate may be analogized to the exclusive jurisdiction over similar claims against a court-appointed trustee or debtor-in-possession. It is well settled that such fiduciary cannot be sued in state court without leave of the bankruptcy court for acts done in his official capacity and within his authority as an officer of the court. *In re Campbell,* 13 B.R. 974, 976 (Bankr.D. Idaho 1981). A limited exception to the rule is provided in 28 U.S.C. § 959(a). 28 U.S.C. § 959 provides:

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts of transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

This section was intended to permit actions redressing torts committed in furtherance of the debtor's business. *In re American Associated Systems Inc.,* 373 F.Supp. 977, 979 (E.D.Ky.1974). However, this section was not intended to apply to a breach of a fiduciary duty in the administration of a bankruptcy estate. *Maguire v. Puente,* 120 Misc.2d 871, 466 N.Y.S.2d 934, 938 (1983). The bankruptcy court is responsible for resolving issues affecting the administration of the estate. 28 U.S.C. § 157(b)(2)(A). Thus, we must determine whether the facts and the remedy sought by the Appellant fall within the narrow parameters of § 959(a) and outside the jurisdiction of the bankruptcy court over the administration of the estate. In *Ex parte Baldwin,* 291 U.S. 610, 618, 54 S.Ct. 551, 555, 78 L.Ed. 1020 (1934), the Supreme Court held that the exclusive jurisdiction of the bankruptcy court is determined by the main purpose of the suit. The main purpose of the suit herein seeks damages caused by the fiduciaries alleged misconduct in the administration of the estate. Accordingly, since the alleged breach was not premised on an act or transaction of the fiduciary in carrying on the bankrupt's business operation, § 959(a) is not applicable.

B. *Whether a party may be sanctioned after a case is dismissed for lack of subject matter jurisdiction.*

■ Judge Ryan concluded that because he had dismissed the case for lack of subject matter jurisdiction, he lacked the authority to impose sanctions. Since we reverse Judge Ryan's determination that the court lacked subject matter jurisdiction we must remand so that Judge Ryan may consider whether Mangun's conduct was abusive and within the ambit of Bankruptcy Rule 9011.

■ It should be noted that a court retains the power to sanction parties, even if the case has been dismissed for lack of jurisdiction. *Orange Production Credit v. Frontline Ventures Ltd., Inc.,* 792 F.2d 797 (9th Cir.1986). In *Orange Production Credit,* the Ninth Circuit held that Fed.R. Civ.P. 11 empowers a district court to impose sanctions even though the court lacks jurisdiction over the case. 792 F.2d at 801.

Fed.R.Civ.P. 11 has been substantially adopted in Bankruptcy Rule 9011. In *Gonzales v. Parks,* 830 F.2d 1033 (9th Cir.1987), the Ninth Circuit acknowledged that the bankruptcy court has the power to impose sanctions under Bankruptcy Rule 9011. Thus, Judge Ryan could have used Bankruptcy Rule 9011 to impose sanctions even though the case had been dismissed for lack of subject matter jurisdiction.

We therefore conclude that the bankruptcy court had subject matter jurisdiction over Mangun's complaint and that the bankruptcy court may rule on Bartlett's motion for sanctions.

REVERSED and REMANDED.