In re **SIZZLER RESTAURANTS INTERNATIONAL, INC.,** Debtor.

**XX Affects all Debtors.**

**Sizzler USA Restaurants, Inc., Plaintiff,**

v.

**Belair & Evans LLP, Defendant.**

**Belair & Evans LLP, Counterclaimant,**

v.

**Sizzler USA Restaurants, Inc.; Kathryn T. McGuigan; National Union Fire Insurance Co., Counterclaim Defendants.**

**Bankruptcy No. SV 96–16075–AG. Adversary No. 98–1720–AG.**

United States Bankruptcy Court, C.D. California.

March 13, 2001.

---

8.  Mermelstein requests that the matter be remanded to a different bankruptcy judge. The Court declines to do so.

Richard M. Pachulski, Debra Grass-green, Iain A.W. Nasatir, Pachulski, Stang, Ziehl & Young P.C., Los Angeles, CA, for Sizzler.

Jason Wallach, Kenneth Ingber, Herman & Wallach, Los Angeles, CA, for Defendant.

Maryanne Wilsbacher, Los Angeles, CA, Office of the U.S. Trustee.

## MEMORANDUM DISPOSITION RE COUNTER–CLAIMANT'S MOTION TO APPROVE VOLUNTARY DISMISSAL OF ADVERSARY PROCEEDING; OR ALTERNATIVELY FOR PERMISSIVE ABSTENTION

ARTHUR M. GREENWALD, Bankruptcy Judge.

Counter-claimant Belair and Evans, LLP ("Belair"), attorneys at law, seeks court approval of the voluntary dismissal of its counter-claim against counterclaim defendant, Kathryn T. McGuigan ("McGuigan"), pursuant to Fed.R.Civ.P. 41(a)(2), or, alternatively, requests that the court abstain from hearing the counter-claim, pursuant to 28 U.S.C. § 1334(c)(1).

This motion came on for hearing on August 27, 1999. Following supplemental briefing from the parties regarding whether the court has subject matter jurisdiction over the counter-claim, the motion was argued further and submitted on October 22, 1999.

### STATEMENT

In June, 1996, Sizzler Restaurants International, Inc. ("Sizzler") filed a Chapter 11 petition in bankruptcy. The estate was administered by Sizzler as the debtor-in-possession. Sizzler's Plan of Reorganization was confirmed in August, 1997.

Beginning in 1992, Belair represented Sizzler in numerous personal injury matters in New York and New Jersey. In September, 1998, Sizzler filed a complaint against Belair for declaratory and injunctive relief and for turnover pursuant to 11 U.S.C. § 542, seeking to prevent Belair from filing additional proofs of claim for pre-petition legal services.[1] In response, Belair filed counter-claims against Sizzler, McGuigan, and National Union First Insurance Company ("National"), Sizzler's insurer. At the time, McGuigan was employed as Sizzler's Director of Risk Management and Vice President of Human Resources.

In its counter-claim, Belair alleged that, both prior to and after filing for bankruptcy protection, Sizzler, through McGuigan, promised that it would pay Belair's outstanding fees incurred both pre-petition and post-petition without Belair having to file a proof of claim for those fees. Belair alleged that, in reliance on these assurances, it continued to perform legal services for Sizzler. Belair further alleged that it had not been paid the outstanding fees and that, inasmuch as it continued to be attorney of record for a number of personal injury cases in which Sizzler was a defendant, there existed the possibility of having to provide additional legal services for Sizzler without the likelihood that it would be paid for performing those services.

Based on these allegations, Belair sued Sizzler and National for damages on theories of contract, quantum meruit and unjust enrichment, and for declaratory relief. Belair also sued Sizzler and McGuigan for damages arising from fraud and negligent misrepresentation. In addition to declaratory relief, Belair prayed for damages against Sizzler, McGuigan and National, jointly and severally, in the amount of approximately $91,000.

---

1. Prior to September of 1998, Belair had filed two proofs of claim for pre-petition legal services.

In its counter-claim, Belair made three allegations against McGuigan directly:

1) that McGuigan had assured Belair that the firm would continue to be retained and that the firm would continue to be paid notwithstanding Sizzler's bankruptcy petition, and that, in reliance on these assurances, Belair agreed to continue to perform services for Sizzler post-petition;

2) that McGuigan promised Belair that Sizzler would request that the bankruptcy court authorize Belair to continue to represent Sizzler and to be paid for such services, and that, based on McGuigan's request and assurances, Belair advised local counsel that pre- and post-bankruptcy fees would be paid; and

3) that, after confirmation of Sizzler's Chapter 11 plan, McGuigan assured Belair that all of its bills would be paid by National; requested Belair to continue performing services on pending cases; and assured Belair that she would intervene and obtain payment from National and would get Sizzler's bankruptcy counsel, Pachulski, Stang, Ziehl & Young, to intervene with National, so that Belair would not have to sue National for payment.

In July, 1999, the court approved a settlement between Belair, Sizzler and National, whereby Belair was paid $60,000 for its claimed fees. The settlement also included an exchange of releases, with Belair dismissing its counter-claim against Sizzler and National with prejudice. During the process, Belair had offered to dismiss McGuigan as well, either with prejudice, along with the exchange of mutual releases, or without prejudice, without releases. McGuigan rejected this offer.

On July 29, 1999, Belair filed the instant motion, requesting voluntary dismissal of the counter-claim without prejudice, stating that it did not wish to pursue the matter against McGuigan "at this time." Alternatively, Belair requested that the court permissively abstain from hearing the counter-claim. McGuigan opposed Belair's motion, desiring to have the matter either litigated or dismissed with prejudice. Alternatively, McGuigan asked for attorney's fees and costs, in the event that the court approved the dismissal of the counter-claim without prejudice.

On July 30, 1999, McGuigan requested the court to grant summary judgment regarding Belair's counter-claim. In addition, on September 2, 1999, McGuigan filed a motion for leave to file a third party complaint against Sizzler. These motions are pending.

## DISCUSSION

**1. The counterclaim filed by Belair against McGuigan is a core proceeding.**

■ "Jurisdiction is determined as of the commencement of the action." *Linkway Investment Co., Inc. v. Olsen (In re Casamont, Ltd.)*, 196 B.R. 517, 521 (9th Cir. BAP 1996), citing *Fietz v. Great Western Savings (In re Fietz )*, 852 F.2d 455, 457 n. 2 (9th Cir.1988). "[T]he federal district court has original and exclusive jurisdiction of all cases under title 11. 28 U.S.C. § 1334(a). The district court has original jurisdiction of all civil proceedings arising under title 11. 28 U.S.C. § 1334(b). Furthermore, a bankruptcy judge may hear and determine all cases arising under the Bankruptcy Code and all core proceedings arising in a bankruptcy case. 28 U.S.C. § 157(b)(1). Accordingly, for subject matter jurisdiction to exist there must be at least some relationship between the proceeding and the title 11 case." *Mangun v. Bartlett (In re Balboa Improvements, Ltd.)*, 99 B.R. 966, 969 (9th Cir. BAP 1989). "Put another way, claims

that arise under or in Title 11 are deemed to be 'core proceedings,' while claims that are related to Title 11 are 'noncore' proceedings.'" *Maitland v. Mitchell (In re Harris Pine Mills*), 44 F.3d 1431, 1435 (9th Cir.1995). "As a general rule a bankruptcy court does not have jurisdiction in controversies between third parties not involving the debtor or property of the estate. If, however, such controversies are 'related to' the underlying bankruptcy case, the court has jurisdiction pursuant to 28 U.S.C. § 1334(b)." *Casamont*, 196 B.R. at 521 (internal citations omitted).

At the outset this court had subject matter jurisdiction over Belair's counter-claim as the counter-claim constituted a core proceeding. See *Harris Pine Mills*, 44 F.3d 1431. In the *Harris Pine Mills* case, an action was filed in state court against the Chapter 11 trustee and the trustee's agents. The debtor was not named in the suit. The suit alleged fraud, negligence, and negligent misrepresentation surrounding the trustee's sale of assets of the estate. The trustee removed the case to the district court, whereupon the district court referred the case to the bankruptcy court as a core matter.

On appeal to the Ninth Circuit, the *Harris Pine Mills* plaintiffs disputed the district court's characterization of the matter as a core proceeding, contending that the district court erred in refusing to remand their action to state court. *Id.* at 1433–1434. The Ninth Circuit upheld the district court's assertion of subject matter jurisdiction under 28 U.S.C. § 157(b)(2)(A) and (b)(2)(O),[2] *id.* at 1437, affirming the district court's determination that the suit against the trustee was a core proceeding,

inasmuch as the claims were based upon post-petition conduct by the trustee and his agents which was "inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate." *Id.* at 1438. In affirming the district court, the Court of Appeals additionally noted that a state law claim not falling under § 157(b)(2) could nevertheless qualify as a noncore, related proceeding. *Id.* at 1436–1437 and n. 8, citing *Piombo Corp. v. Castlerock Properties (In re Castlerock*), 781 F.2d 159 (9th Cir.1986). Cf. *Bethlahmy, IRA v. Kuhlman (In re ACI–HDT Supply Co.*), 205 B.R. 231, 237 (9th Cir. BAP 1997) (distinguishing *Harris Pine Mills* on the basis that the trustee's conduct occurred post-petition).

Further, the core nature of the counter-claim was not altered by Belair's dismissal of Sizzler. See *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.*), 155 B.R. 521 (9th Cir. BAP 1993). In the *DeLorean* case, debtor's counsel filed a state court malicious prosecution action against the Chapter 7 trustee, counsel for the trustee, and the chairman of the debtor's creditors' committee. The suit was based on the conclusion of a lawsuit in the debtor's counsel's favor, wherein the trustee had alleged that the debtor had fraudulently conveyed property of the estate to his counsel. The trustee removed the action to the bankruptcy court. Plaintiff dismissed the trustee and moved that the bankruptcy court abstain and remand the action to the state court. The bankruptcy court granted the motion. *Id.* at 522.

On appeal, the BAP reversed the bankruptcy court, holding that the malicious

---

**2.** 28 U.S.C. § 157(b)(2) provides in pertinent part: Core proceedings include, but are not limited to—(A) matter concerning administration of the estate; ... (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

prosecution suit was a core proceeding, notwithstanding the fact that the trustee had been dismissed. *Id.* at 525. The BAP reasoned that the malicious prosecution action arose "from the efforts of officers of the estate to administer the estate and collect its assets and therefore impacts the handling and administration of the estate," and that "it is inextricably tied to the determination of an administrative claim against the estate and is similarly tied to questions concerning the proper administration of the estate." *Id.* According to the BAP, the suit, as against the trustee's counsel, was "essentially a suit against the trustee." *Id.* Cf. *In re ACI–HDT,* 205 B.R. at 236 (distinguishing *DeLorean* on the basis that the lawsuit there implicated post-petition conduct and was the equivalent of an action against the trustee).

In the instant case, prior to confirmation of its Plan of Reorganization, Sizzler was a debtor-in-possession, its rights, powers and duties being defined under 11 U.S.C. § 1107(a), being compared to a trustee serving in a Chapter 11 case. To the extent that the counter-claim was brought against McGuigan, who during the relevant time period was Sizzler's employee and agent, the counter-claim was the equivalent of a suit against Sizzler, the debtor-in-possession.

The counter-claim alleged post-petition, as well as pre-petition, conduct against McGuigan and Sizzler bearing on the administration of the estate, inasmuch as their conduct affected the administration of potential claims by Belair against the estate. In the words of *DeLorean,* Belair's counter-claim is "inextricably tied to questions concerning the proper administration of the estate." Consequently, under the holdings of *Harris Pine Mills* and *DeLorean Motor Co.,* the counter-claim constituted a core proceeding under 28 U.S.C. § 157(A) and (O) at the time that it

was filed and continued to constitute a core proceeding notwithstanding the dismissal of Sizzler. Accordingly, this court has jurisdiction over Belair's counter-claim.

## 2. *Alternatively, Belair's counter-claim against McGuigan is related to the Sizzler bankruptcy.*

Assuming that the counter-claim against McGuigan is not the equivalent of a suit against Sizzler, the court has jurisdiction over the counter-claim on the grounds that it is related to the Sizzler bankruptcy. "An action is 'related to' a bankruptcy case if the outcome of the proceeding could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact on the administration of the bankruptcy estate. *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988) (adopting the position of the Third Circuit as explained in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984))." *Casamont,* 196 B.R. at 521. See also *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), citing *Pacor* with approval.

In the case of *In re Balboa Improvements,* 99 B.R. 966 (9th Cir. BAP 1989), an individual who stood to earn a fee if he could procure refinancing for a buyer of certain property of the estate sued the Chapter 11 debtor's attorney for damages, based on the attorney's alleged misconduct administering the estate with regard to that property. The BAP held that, since the action "pertains to the administration of the estate by debtor's counsel and with respect to an asset of the estate, ... we believe the outcome of the action directly affects the administration of the bankruptcy estate." *Id.* at 969. According to the BAP, the action was a proceeding at least related to the bankruptcy, to the extent

that it sought a determination of damages between the plaintiff and debtor's counsel (and was core pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), to the extent that the judgment would determine the proper administration of the estate by debtor's counsel). *Id.* The BAP explained that "[t]his action is related since the claim for damages is based upon alleged misconduct in the very administration of the estate." *Id.* (Moreover, the BAP noted that, as the damages were claimed to have arisen from misconduct in administration of the estate, the bankruptcy court could entertain the action for damages under the doctrine of pendent jurisdiction. *Id.*)

In the instant case, Belair is asserting a claim for damages against McGuigan based on allegations of her misconduct in the administration of the bankruptcy estate. Consequently, under *In re Balboa Improvements,* Belair's counter-claim is related to the Sizzler bankruptcy, so as to give this court jurisdiction over the counter-claim.

An alternative basis for related to jurisdiction can be found in Sizzler's duty to indemnify McGuigan should she be found liable on the counter-claim. Belair sued McGuigan for statements she allegedly made in her capacity "as Director of Risk Management and/or Vice President of Sizzler" and as an "authorized agent" of Sizzler. In the course of opposing a motion by McGuigan to disqualify Sizzler's bankruptcy counsel, Sizzler, through its Vice President and General Counsel, Michael B. Green, "agreed to indemnify Ms. McGuigan to the extent required by Cal. Labor Code § 2802."[3] Declaration of Michael B. Green, in support of Sizzler's Opposition to McGuigan's Motion to Disqualify Pachulski, et al.

Under the terms of § 2802, were McGuigan found to have been acting within the scope of her employment, this would trigger indemnification liability on the part of Sizzler, unless McGuigan, while making the alleged actionable statements, was acting unlawfully and knew that she was acting unlawfully.

To date it has not been asserted that McGuigan knowingly acted unlawfully. McGuigan's claim of indemnification against Sizzler impacts on the administration of the estate inasmuch as it raises questions about the appropriateness of Sizzler's conduct in the course of estate administration. Furthermore, under the terms of the plan of reorganization, this court retains jurisdiction to adjudicate the claim of indemnification. See Debtor's Second Amended Plan of Reorganization, As Modified, Article XII, Section 1.

In those circuits which have adopted the *Pacor* standard, courts have routinely found suits between non-debtors to be related to the bankruptcy, where the debtor is contractually obligated to indemnify the non-debtor defendant. *In re Master Mortgage, Inc.,* 168 B.R. 930, 934–935 (Bankr.W.D.Mo.1994), citing cases (noting that courts have found related to jurisdiction where "[t]here is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate").[4]

■ While Sizzler's duty to indemnify is not based on an unconditional contractual

---

**3.** Section 2802 provides:

An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be lawful.

**4.** See *Michigan Employment Security Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine),* 930 F.2d 1132, 1143 (6th Cir.1991); *Philippe v. Shape, Inc.,* 103 B.R. 355, 358 (D.Maine

obligation, this court is persuaded by those cases which have refused to read *Pacor* as requiring an unconditional indemnification agreement. See *Lindsey v. O'Brien, Tanski, et al. (In re Dow Corning Corp.)*, 86 F.3d 482, 491 (6th Cir.1996) ("[i]t has become clear following *Pacor* that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction"); *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 634 (6th Cir.1986) (§ 1334 "does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding").[5] The counter-claim is at least related to the Sizzler bankruptcy in that Sizzler is obligated to indemnify McGuigan if the requirements of § 2802 are met. The remote possibility that Sizzler could avoid having to indemnify McGuigan under § 2802 has little if any bearing on whether the court has jurisdiction over the counter-claim.

### 3. *Abstention is inapplicable to the counter-claim.*

■ On the basis that the bankruptcy court has jurisdiction over the counter-

claim, Belair contends that the court should exercise its powers of permissive abstention, pursuant to 28 U.S.C. § 1334(c)(1), and abstain from adjudicating the matter.[6] In opposition, McGuigan asserts that abstention is not appropriate, inasmuch as there is no pending state court proceeding to which this court could defer.

In *In re Tucson Estates*, 912 F.2d 1162, 1167 (9th Cir.1990), the Ninth Circuit set forth twelve factors which a court ought to consider in deciding whether to abstain under § 1334(c)(1). Included in this list is "the presence of a related proceeding commenced in state court or other nonbankruptcy court." *Id.* Citing *Tucson Estates* and acknowledging the existence of a related proceeding as "a factor," the Court of Appeals held, in *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1009 (9th Cir.1997), that the absence of a pending state court proceeding is dispositive of the issue of whether the trial court should permissively abstain. The court explained:

> Abstention can exist only where there is a parallel proceeding in state court.

1989); *Kossman v. TJX Cos., Inc.*, 136 B.R. 640 (W.D.Pa.1991); *Stanger v. Athos Steel Aluminum, Inc. (In re Athos Steel )*, 71 B.R. 525, 536 (Bankr.E.D.Pa.1987); *Williams v. Shell Oil Co.*, 169 B.R. 684, 690 (S.D.Cal.1994); *Beneficial Nat'l Bank v. Best Receptions Systems, Inc. (In re Best Reception )*, 220 B.R. 932, 949 (Bankr.E.D.Tenn.1998).

**5.** In holding that related to jurisdiction did not exist, the *Pacor* court observed that "[the non-debtor defendant] is not a contractual guarantor of [the debtor], nor has [the debtor] agreed to indemnify [the non-debtor defendant], and thus a judgment in the [non-debtor] action could not give rise to any automatic liability on the part of the estate." *Id.* As a result, some courts have read *Pacor* as holding that an unconditional indemnification agreement is *necessary* for the existence of related to jurisdiction. See *Williams*, 169 B.R. at 689 (concluding that "*Pacor* dictate[s]

that 'related to' jurisdiction attaches only where cross-claims arising out of a civil action are directly, contractually linked to the bankrupt party"); *Best Reception*, 220 B.R. at 948 (concluding that, in *Pacor*, "the Third Circuit concluded that indemnity rights do not give rise to 'related to' jurisdiction in the absence of automatic liability"). This court declines to accept a reading of *Pacor* which requires an unconditional indemnification agreement or otherwise automatic liability on the part of the debtor in order to find the existence of related to jurisdiction.

**6.** 28 U.S.C. § 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

That is, inherent in the concept of abstention is the presence of a pendant state court action in favor of which the federal court must, or may, abstain.

To require a pendant state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b), which provides district courts with the authority to remand civil actions properly removed to federal court, in situations where there is no parallel proceeding. Section 1334(c) abstention should be read *in pari materia* with section 1452(b) remand, so that the former applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2). *Id.* at 1009–1010.[7]

Given the lack of a pending parallel state court action here, the court is precluded from exercising its discretion to abstain from adjudicating Belair's counter-claim.

### 4. *The court will conditionally grant Belair's motion to approve voluntary dismissal of its counter-claim pursuant to Fed.R.Civ.P.Rule 41.*

As an alternative to a request that the court permissively abstain from hearing its counter-claim, Belair has asked that the court approve a voluntary dismissal of the counter-claim pursuant to Fed.R.Civ.P.Rule 41(a)(2). Specifically, Belair seeks to dismiss the counter-claim without prejudice.

■■■ Once a defendant has, as in the instant case filed an answer, Rule 41(a)(2) applies. It provides that a plaintiff cannot dismiss the action without leave of court. *Hamilton v. Shearson–Lehman Am. Express, Inc.,* 813 F.2d 1532, 1535 (9th Cir. 1987). Rule 41(a)(2) further provides that, in ordering an action dismissed, the court may impose "such terms and conditions as [it] deems proper." Fed.R.Civ.P.Rule 41(a)(2). The purpose of the rule is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal. *Stevedoring Serv. of Am. v. Armilla Int'l,* 889 F.2d 919, 921 (9th Cir. 1989). Consequently, courts generally allow dismissal without prejudice unless the defendant will suffer "some plain legal prejudice as a result of the dismissal." *Hamilton v. Firestone Tire & Rubber Co., Inc.,* 679 F.2d 143, 145 (9th Cir.1982). The Ninth Circuit has defined legal prejudice in this context as "prejudice to some legal interest, some legal claim, [or] some legal argument." *Westlands Water Dist. v. United States,* 100 F.3d 94, 97 (9th Cir. 1996).

■■■ The decision to grant a voluntary dismissal under Rule 41(a)(2) is addressed to the sound discretion of the court. *Sams v. Beech Aircraft Corp.,* 625 F.2d 273, 277 (9th Cir.1980). "In exercising this discretion, the court must make three separate determinations: (1) whether to allow dismissal at all; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Burnette v. Godshall,* 828 F.Supp. 1439, 1443 (N.D.Cal. 1993), aff'd. sub nom *Burnette v. Lockheed Missiles & Space Co.,* 72 F.3d 766 (9th Cir.1995). See also *United States v. One*

---

7. An earlier case, *Eastport Assocs. v. City of Los Angeles (In re Eastport),* 935 F.2d 1071 (9th Cir.1991), held that the fact that a state court proceeding had never been initiated was merely "*another factor* weighing against abstention." *Id.* at 1078 (emphasis added). While not referencing *Eastport, Security Farms* nonetheless appears to have invalidated its holding on this point.

*Tract of Real Property*, 95 F.3d 422, 425 (6th Cir.1996) (by providing that a dismissal under Rule 41(a)(2) is without prejudice "[u]nless otherwise specified," the rule "implicitly permits the district court to dismiss an action with prejudice in response to a plaintiff's motion to dismiss without prejudice").

McGuigan objects to dismissal without prejudice. She urges the court to dismiss the counter-claim with prejudice or deny the dismissal. McGuigan asserts that the court may not dismiss the action without prejudice inasmuch as (1) she is entitled to a resolution of the fraud claims which Belair has brought against her; (2) the court has dismissed the counter-claim as against Sizzler without prejudice; (3) she should not have to face the prospect of a second lawsuit on these same charges, were Belair to decide to refile the action in state court at some point in the future; and (4) her interest in a future suit for malicious prosecution against Belair would be compromised by a dismissal without prejudice. Alternatively, were the court inclined to dismiss without prejudice, McGuigan seeks attorney's fees and costs incurred in defending against the counter-claim as a condition of a dismissal.

McGuigan's argument that the two-dismissal rule bars the court from approving a dismissal without prejudice lacks merit. The two-dismissal rule contained in subsection (a)(1) is not implicated here, given that Belair seeks dismissal pursuant to Rule 41(a)(2). See *Sutton Place Development Co. v. Abacus Mortgage Investment Co.*, 826 F.2d 637, 640 (7th Cir.1987) ("[b]y its own clear terms the 'two dismissal rule' applies only when the second dismissal is by notice under Rule 41(a)(1). It does not apply to ... dismissal by court order under Rule 41(a)(2)") (internal quotations omitted), cited with approval in *Lake at Las Vegas Investors Gp., Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724, 727 (9th Cir.1991). Cf. *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 298 (5th Cir.1963) (noting that Rule 41(a)(2) provides that the court may order a second dismissal, gained pursuant to that subsection, to be with prejudice if the repeated request is "obsessively prejudicial").

Also without merit is McGuigan's argument that she should not have to face the prospect of a second lawsuit filed in state court. The Ninth Circuit has held that the possibility of a later suit does not rise to the level of legal prejudice which would allow the court to deny Belair a dismissal without prejudice. *Hamilton v. Firestone*, 679 F.2d at 145.

However, there is merit to McGuigan's claim that she will suffer legal prejudice as a result of a dismissal without prejudice because her ability to bring suit against Belair for malicious prosecution would be compromised. McGuigan claims that Belair is acting with malice and without reasonable grounds in maintaining the counter-claim against her as an individual. A determination on the merits is necessary to maintain a malicious prosecution claim under California law. See *McCubbrey v. Veninga*, 39 F.3d 1054, 1055 (9th Cir.1994). However, a dismissal without prejudice pursuant to Rule 41(a)(2) leaves the parties where they would have stood had the lawsuit never been brought. See *Ryan v. Loui (In re Corey )*, 892 F.2d 829, 835 (9th Cir.1989), quoting *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir.1959) (" 'a suit dismissed without prejudice pursuant to Rule 41(a)(2) leave the situation the same as if the suit had never been brought in the first place' "). It is reasonable for McGuigan to fear that a dismissal without prejudice would make it impossible for her to be heard regarding her claim of malicious prosecution, and therefore impossible for her to gain recompense for the

damage suffered to her reputation by virtue of the fraud allegations.[8]

Belair seeks to dismiss its counter-claim against McGuigan as it appears to have received the basic elements of relief by settling with Sizzler. Further litigation at this point would not appear to be cost effective for Belair. Belair's indication that it did not wish to pursue the matter in state court if this action is dismissed without prejudice is significant. A result which prevents a legal claim from being able to be brought prejudices that claim and thus constitutes legal prejudice under *Westlands*.

While the court "do[es] not mean to imply that by filing a counterclaim in malicious prosecution, or by professing an intention to do so later, any defendant may defeat any motion for dismissal without prejudice," *Selas Corp. of Amer. v. Wilshire Oil Co. of Tex.*, 57 F.R.D. 3, 6 (E.D.Pa.1972), the court finds in *Selas* support for its conclusion that a dismissal without prejudice under the circumstances of this case would prejudice McGuigan. In *Selas*, a corporate employee was sued as an individual, along with the corporation, for damages arising from alleged violation of securities and banking laws. The plaintiff settled with the corporation, gaining much of the relief it sought in instituting the suit, and then moved to dismiss the employee without prejudice under Rule 41(a)(2). *Id.* at 5. The court found that a dismissal without prejudice "would, under the circumstances of this case, constitute clear legal prejudice to the defendant." *Id.* at 6. The court explained that, "[w]hile we express no opinion whatever on the merits of [the employee's] claim [for malicious prosecution], we think he has a right at some point at least to be heard on it." *Id.*

■ Finally, in reaching a determination whether Belair ought to be granted a dismissal without prejudice, the court also considers the fact that McGuigan has pending a motion for summary judgment. *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir.1987) ("[i]n *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969), the court identified the following

---

**8.** McGuigan's claim that she is entitled to a resolution on the merits simply because she needs to clear her reputation is off the mark. First, "plain legal prejudice [does not] arise from defendant's missed opportunity for a legal ruling on the merits." *Watson v. Clark*, 716 F.Supp. 1354, 1355 (D.Nev.1989), citing *In re Fed. Election Campaign Act Litigation*, 474 F.Supp. 1051, 1052 (D.D.C.1979), aff'd. without opinion, 909 F.2d 1490 (9th Cir. 1990). Second, while McGuigan is probably correct that a dismissal without prejudice will, under the circumstances of this case, effectively foreclose her opportunity to clear her name, this does not in and of itself appear to rise to the level of legal prejudice under *Westlands,* inasmuch as prejudice to one's career reputation does not constitute prejudice to a legal interest, legal claim or legal argument.

In *Westlands*, the Ninth Circuit held that uncertainty over water rights if the matter remained unresolved was insufficient to constitute plain legal prejudice. 100 F.3d at 97 (rejecting the Eighth Circuit's holding in *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir.1987), that the trial court did not abuse its discretion when it denied the motion to voluntarily dismiss the action where a failure to resolve the claim would generate uncertainty about title to land and possibly jeopardize development). But see *Radiant Technology Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 204 (N.D.Tex.1988) ("[t]he nature of a plaintiff's claims may be such that, if the defendant is not afforded the opportunity for vindication on the merits in this forum, it will incur legal prejudice. This may be so due to ... the character of the allegations of plaintiff's complaint").

It appears that, in the Ninth Circuit, the issue of McGuigan's need to clear her reputation is best handled within the context of her ability to file a malicious prosecution suit if Belair's counter-claim is dismissed without prejudice.

factors to be considered in deciding a Rule 41(a)(2) motion: ... and (4) the fact that a motion for summary judgment has been filed by the defendant"). An attempt to avoid an adverse decision on the merits may constitute legal prejudice. See *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir.1996) ("a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice"); *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969) (affirming the denial of plaintiff's motion to dismiss without prejudice on the basis that, inter alia, plaintiff "was attempting to deprive the defendant of a ruling on the summary judgment motion by its dismissal tactic").

McGuigan could not defeat Belair's motion to dismiss simply by filing a motion for summary judgment, and her success on summary judgment is uncertain. However, the fact that McGuigan has filed a motion for summary judgment, and that a dismissal without prejudice would allow Belair to avoid a decision on the merits weighs, even if slightly, in favor of McGuigan.[9] See *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 474 (7th Cir.1988) ("[t]he enumeration of the factors to be considered in *Pace* is not equivalent to a mandate that each and every such factor be resolved in favor of the [plaintiff] before dismissal is appropriate") (internal quotations omitted).

The court finds that Belair is not entitled to voluntarily dismiss its counter-claim against McGuigan without prejudice. If otherwise, McGuigan would suffer legal prejudice, both by being effectively foreclosed from bringing a subsequent action for malicious prosecution against Belair,

and from Belair's avoidance of a resolution of McGuigan's motion for summary judgment.

Beyond opposing dismissal without prejudice, McGuigan has urged the court to dismiss Belair's counter-claim with prejudice. The court may consider McGuigan's request if Belair has had an opportunity to oppose such a dismissal. See *One Tract*, 95 F.3d at 426 ("the plaintiff is entitled to an opportunity to be heard in opposition to dismissal with prejudice"). McGuigan having requested dismissal with prejudice in her response in opposition to Belair's motion, Belair had the opportunity to argue against a dismissal with prejudice in its reply brief and at the hearing on its motion. Thus, it is appropriate for the court to consider whether dismissal with prejudice is warranted. See *id.* (holding that it is not an abuse of the trial court's discretion to dismiss with prejudice upon plaintiff's motion to dismiss without prejudice, where defendant requested in his filings that the dismissal be with prejudice, and the plaintiff had an opportunity to argue against such action at the hearing).

Belair argues that the court should not dismiss its counter-claim with prejudice because, in a subsequent malicious prosecution suit, a dismissal could give rise to the inference that Belair lacked reasonable grounds for maintaining the counter-claim against McGuigan. We agree with the court in *Selas* that this is not "a factor which ought seriously to influence our decision here, both because the possibility of injustice seems remote and because it is not entirely relevant under the standards for deciding a motion for voluntary dismissal." 57 F.R.D. at 5 n. 2.

---

9. McGuigan filed her motion on July 30, 1999, after Belair had filed its motion seeking approval of a voluntary dismissal on July 29, 1999. However, it is unlikely that McGuigan filed her motion in response to Belair's motion, in an to manipulate the summary judgment factor.

However, the court may not dismiss Belair's counter-claim with prejudice without first giving Belair the opportunity to withdraw its motion and proceed with litigating the counter-claim. See *Lau v. Glendora Unified School Dist.*, 792 F.2d 929, 931 (9th Cir.1986) (plaintiff must be given "a reasonable period of time within which [either] to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or to accept the dismissal despite the imposition of conditions"); *One Tract*, 95 F.3d at 426 (abuse of discretion to dismiss with prejudice without giving plaintiff the opportunity to withdraw its motion to dismiss).

Though the court is prepared to dismiss Belair's motion, the court will defer such action and grant Belair the option to withdraw its motion and proceed with litigating the counter-claim. This option to withdraw the motion shall be exercised within a reasonable time, determined by the court to be twenty days from the entry of the order on this motion. If Belair chooses not to proceed with the counter-claim, its motion to dismiss without prejudice will be denied and McGuigan's request for dismissal with prejudice will be granted.[10]

### CONCLUSION

The court finds that it has subject matter jurisdiction over Belair's counter-claim pursuant to 28 U.S.C. § 1334(b), as the counter-claim constitutes a core proceeding in, or is at least related to, the Sizzler bankruptcy. The court declines to abstain from adjudicating Belair's counter-claim pursuant to 28 U.S.C. § 1334(c)(1), as there is no pending state court action.

Belair shall be given twenty days (20) from the date of entry of this order to file and serve a Notice of Withdrawal of its motion to dismiss the counterclaim without prejudice.

In the event Belair does not timely file and serve its Notice of Withdrawal, the counterclaim is dismissed with prejudice, the court granting McGuigan's request to dismiss with prejudice the counterclaim. Belair's motion to dismiss without prejudice is denied.

If Belair timely elects to proceed with prosecuting the counter-claim, the court will set a further status conference hearing regarding McGuigan's motion for summary judgment and request to file a third party complaint.

The contents of this Memorandum of Decision has constitute the court's findings of fact and conclusions of law.

### ORDER RE COUNTER–CLAIMANT'S MOTION TO APPROVE VOLUNTARY DISMISSAL OF ADVERSARY PROCEEDING; OR ALTERNATIVELY FOR PERMISSIVE ABSTENTION

In accordance with this court's Memorandum of Decision filed concurrently, IT IS ORDERED that:

1. This court has subject matter jurisdiction over Belair & Evans LLP's ("Belair") counter-claim against Kathyrn T. McGuigan, pursuant to 28 U.S.C. § 1334(b), in that this counter-claim constitutes a core proceeding, or, alternatively, is related to the administration of the Sizzler bankruptcy estate.

2. The court is precluded from exercising its discretion to abstain from adjudicating Belair's counter-claim pursuant to 28 U.S.C. § 1334(c)(1), as there is no pending state court action.

---

**10.** Because the court denies Belair's motion to dismiss without prejudice, the court does not reach McGuigan's alternative request for attorney's fees and costs incurred in defending against the counter-claim.

3. Belair shall be given twenty days (20) from the date of entry of this order to file and serve a Notice of Withdrawal of its motion to dismiss the counterclaim without prejudice.

4. In the event Belair does not timely file and serve its Notice of Withdrawal, the counterclaim is dismissed with prejudice, the court granting McGuigan's request to dismiss with prejudice the counterclaim, Belair's motion to dismiss without prejudice is denied.

5. In the event that Belair timely files a Notice of Withdrawal, the court will set a further status conference hearing regarding Belair's prosecution of its counterclaim, and at that time will set new dates for hearing on McGuigan's motion for summary judgment and request to file a third party complaint.

## NOTICE OF ENTRY OF JUDGMENT OR ORDER AND CERTIFICATE OF MAILING

**TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:**

You are hereby notified, pursuant to Local Bankruptcy Rule 9021–1(1)(a)(v), that a judgment or order entitled **ORDER RE COUNTER-CLAIMANT'S MOTION TO APPROVE VOLUNTARY DISMISSAL OF ADVERSARY PROCEEDINGS; OR ALTERNATIVELY FOR PERMISSIVE ABSTENTION** was entered on March 13, 2000.